[No. 2405.]

QUINN ET AL. V. THE BALDWIN STAR COAL COMPANY.

1. **Appellate Practice—Instructions—Objections.**

   Appellant cannot question an instruction to which he made no objection in the lower court.

2. **Appellate Practice—Instructions—Measure of Damage—Non-prejudicial Error.**

   Error committed in an instruction in permitting the jury to find as an element of damage loss of profits, is not prejudicial where it is clear the jury allowed no damages on that account.

3. **Injunction—Damages—Recovery on Bond—Attorneys' Fees.**

   Attorneys' fees incurred prior to the issuance of an injunction, in resisting the application for a preliminary writ, are not recoverable in an action upon the injunction bond.

4. **Same.**

   Attorneys' fees incurred in preparing a motion to dissolve an injunction, are recoverable in an action upon the injunction bond, although plaintiff in the injunction proceeding dissolved the injunction by dismissing his action before the motion to dissolve was filed.

5. **Same.**

   In an action for damages upon an injunction bond, where plaintiff recovered a verdict and judgment for a sum for attorneys' fees, incurred in resisting application for temporary injunction, and in preparing a motion for dissolution, and the evidence failed to apportion the fee, and there were no means of knowing how much of the recovery was for services performed before the issuance of the writ, and how much for services performed after its issuance, the entire recovery must be set aside.

6. **Mines and Mining—Injunction—Recovery on Bond—Damage to Mine.**

   In an action on an injunction bond for damages from the falling in of the workings of a mine, pending the time plaintiff was restrained by the writ from working its mine, where the

evidence shows that the mine was in good condition at the time the writ was served, and shows the condition at about the time of the dissolution, it is sufficiently definite as to the condition of the mine when the writ was dissolved to sustain a recovery, in the absence of any objection to the testimony on that account, and in the absence of any evidence on defendant's part that the mine was in a different condition.

7. **Public Lands—Coal Entries—Jurisdiction—Collateral Attack.**

The decision of the secretary of the interior annulling a coal entry, and permitting the amendment of a former entry, so as to include the land in controversy, and issuing a patent thereon, was within the jurisdiction of the interior department, and cannot be collaterally attacked.

8. **Public Lands—Amended Entry—Patent—Recovery of Damages.**

Where a coal entry on the public land was, by mistake, made on the wrong land, and the entryman was permitted to amend his entry so as to cover the land intended to be entered, the amendment to take effect as of the date of the original entry, a patent issued upon the amended entry relates back to the original, so as to make the entryman the equitable owner from that date, and to authorize him to maintain an action for damages for injuries to the land between the dates of the original and amended entries.

9. **Deeds—Mistake—Equitable Title—Recovery of Damages.**

A grantee who goes into possession of property intended to be conveyed by a deed, and expends money developing the same, becomes the equitable owner, and may maintain an action for damages for injury to the land during his possession, although the deed, by mistake, described a different tract of land than the one intended to be conveyed.

10. **Coal Mines—Injunction—Injury to Mine—Recovery of Damage.**

Injury to a coal mine caused by the falling in of the workings, because of the restraining by writ of injunction of the owner from working therein, is an injury to real estate for which the equitable owner may recover damages upon the injunction bond.

11. **Injunction Bond—Amount of Penalty—Order of Court.**

The fact that the amount of the penalty in an injunction bond was greater than the amount fixed by order of court, worked no prejudice to the sureties thereon, in an action upon the bond, where the amount of the recovery was less than the amount fixed by order of court.

*Appeal from the District Court of Gunnison County.*

Mr. D. T. SAPP and Messrs. BROWN & NOURSE, for appellants.

Mr. SPRIGG SHACKELFORD and Mr. S. D. CRUMP, for appellee.

GUNTER, J.

November, 1894, one Sprankle filed a coal declaratory statement on the S. ½ S. E. ¼ Section 18, Township 15 S., R. 86 W., and September, 1895, entered the same as coal land. October, 1895, he made a warranty deed for the land to one Purrier, who, January, 1896, executed a warranty deed therefor to appellee; The Baldwin Star Coal Company. Patent issued to Sprankle January, 1896. September 20, 1895, appellant Quinn made a coal filing on the N. ½ S. E. ¼ said section, township and range, and September, 1896, entered the same as coal land. Appellee filed a protest against the entry of Quinn before its allowance. September 2, 1896, Sprankle filed a petition in the proper U. S. land office asking a correction of the patent issued to him as to the land therein described on the ground that the land intended to be entered, and in truth entered, by him was that covered by Quinn's entry. The proceeding initiated by the petition, to which Quinn was a party, resulted April 19, 1899, in a decision by the secretary of the interior cancelling Quinn's entry and ordering the filing and entry of Sprankle to be amended to conform to the intention of the parties, that is, to embrace the N. ½ of the S. E. ¼ instead of the S. ½ of the S. E. ¼ of said section, township and range. This amendment related back to the time when the entry of Sprankle was made, that is, to September 30, 1895. Patent in time issued in pursuance of the amended entry and recited that it was

granted in pursuance of the entry of September 30, 1895. September 11, 1896, Quinn, after his entry of the N. $\frac{1}{2}$ S. E. $\frac{1}{4}$ said section, township and range, and the issuance of his final receipt therefor, instituted an action against appellee to recover damages for coal mined on the land therein described and to enjoin appellee from continuing its workings on such land. Notice was given of the hearing of the application for a preliminary writ of injunction. Appellee employed counsel to resist this application, and services were rendered by them in its resistance. The writ was granted September 21, 1896, and thereby appellee enjoined from working the mine pending the writ. This injunctive action instituted in the district court of Gunnison county, Colorado, and subsequently transferred to the circuit court of the United States for the District of Colorado, was dismissed by Quinn June 5, 1899. Previous to its dismissal appellee had employed counsel to move a dissolution of the writ, which counsel performed services of value in preparing such motion, and before the institution of this action appellee had paid counsel for such services. July 18, 1899, the present action by appellee was instituted to recover damages on the injunction bond given in above case. Trial was had resulting in a verdict and judgment for appellee in the sum of $1,500.00. Therefrom defendants below are here on appeal.

1. It is said error was committed in giving instruction No. 4. This authorized the jury to allow the appellee as an element of damages such loss of profits, if any, as the evidence showed it had sustained through the closing of the mine pending the writ. No objection below was made to this instruction, appellants, therefore, are not in position to question it. In legal effect it was an instruction given by consent. Further, if there be error in the instruc-

tion, appellants suffered no prejudice from it as it is clear that the jury allowed no damages whatever on account of a loss of profits sustained through a closing of the mine. The verdict was for $1,500.00, and it is clear from the evidence it embraced but two items of damage. One thousand dollars damage from the falling in of the workings of the mine pending the writ, and $500.00 damages for that sum expended for counsel fees in resisting the issuance of the writ and in preparing the motion to dissolve.

2. The court authorized the jury to allow as an element of damages reasonable counsel fees expended in resisting the issuance of the preliminary writ and in efforts to secure its dissolution. Counsel were employed to resist the motion for the preliminary writ, and after its issuance to secure its dissolution. They performed the services for which they were employed, and the undisputed evidence was that they received from appellee therefor the sum of $500.00, and that such sum was a reasonable fee. The evidence does not apportion such fee between the services performed before the issuance of the writ and those performed thereafter. The services performed after the issuance of the writ consisted in making preparations to file and present the motion to dissolve. Such motion was not filed. Before this was done, plaintiff in that suit dismissed his action and thereby dissolved the writ.

It is said there can be no recovery for counsel fees expended in resisting the issuance of a preliminary writ of injunction, because they were incurred before the giving of the bond and the issuance of the writ. It is further said that counsel fees expended in preparing a motion to dissolve—which motion was not heard, the writ having been dissolved on motion of plaintiff before the filing of the motion —cannot be recovered. As stated, the fee of $500.00

was not apportioned between the services performed before the issuance of the writ and the services performed thereafter, and if it was error to allow in the action on the injunction bond for services performed before the giving of the bond and the issuance of the writ, this entire element of damages—counsel fees— must be rejected, there being no means of knowing how much of the $500.00 to apportion to the services performed after the issuance of the writ. The extent of the recovery upon the injunction bond is determined by the condition of the bond. The bond, including its condition, is substantially in the terms of our code authorizing the issuance of a writ upon the giving of a bond. If the condition of the bond, however, were even broader than that prescribed by the code, there could be no recovery upon the condition of the bond without the limits of that prescribed by the code.'

"But when the condition of the bond is broader than that required by law, while the obligation may be held good to the extent that the condition accords with the statute, there can be no recovery beyond what would have been allowed had the condition been in accordance with the statute."—High on Injunctions, Vol. 2, § 1622, p. 1221; *Menken v. Frank*, 57 Miss. 732.

Mills' Ann. Code, sec. 156, provides:

"On granting an injunction, the court or judge shall require * * * a written undertaking on the part of the party in whose favor an injunction is granted, with one or more sufficient sureties, to the effect that the plaintiff will pay to the party enjoined all damages, not exceeding an amount to be specified, as such party may sustain by reason of the injunction, if the court finally decides that the party in whose favor the injunction was issued was not entitled thereto."

"These bonds being generally prescribed and regulated by statute, differ in different states, their general purpose and object, however, being everywhere the same, viz, to protect defendant from any wrongful interference with his rights, and to reimburse him for all damages and costs incurred by reason of an injunction improperly issued."—High on Injunctions (3d ed.), Vol. 2, § 1619, p. 1218.

"The liability of obligors on an injunction bond is confined to the damages and costs caused by the injunction, and adjudged on its dissolution."— Injunctions and other Extraordinary Remedies (Spelling), Vol. 1, § 931, p. 786.

The above code section prescribes that on granting the writ of injunction a bond shall be required, conditioned that the plaintiff will pay to the enjoined party all damages not exceeding a specified amount, as such party may sustain by the issuance of the writ of injunction. This bond should not be interpreted retrospectively unless it appears that such was the legislative intent, but it seems clear that such was not the legislative intent. According to the code provision, the bond was to recover damages sustained through the issuance of the writ and, therefore, damages sustained after the giving of the bond. Counsel fees expended in resisting the application are not damages sustained from the issuance of the writ of injunction, and are, therefore, not within the condition of the bond.—*Randall v. Carpenter*, 88 N. Y. 294.

Neither *Cummings v. Burleson*, 78 Ill. 285; *Creek v. McManus*, 13 Montana 152, nor *Gyger v. Courtney*, 59 Neb. 555, sustains appellee. The counsel fees there allowed were expended in securing a dissolution of the writ, hence, were incurred after the giving of the bond. Counsel fees involved in *Lynch v. Metcalf*, 3 Colo. App. 131, arose after the

giving of the bond. The only question in *Tabor v. Clark,* 15 Colo. 434, was whether counsel fees incurred in defending the main action could be recovered as damages on the injunction bond. The court held that they could not, because the defense of the main action involved services not necessary to a dissolution of the injunction.

The remainder of counsel fees involved in this action was incurred in preparing to move a dissolution of the writ of injunction. This expense was after the giving of the bond and a direct and proximate result of the issuance of the writ of injunction. It is an element of damages within the condition of the bond, and the fact that plaintiff dismissed the action and thereby dissolved the writ before the filing or hearing of the motion to dissolve, does not defeat the right to recover as to such element of damages.—*Lynch v. Metcalf, supra; Mitchell v. Sullivan,* 30 Kan. 231; *Dowling v. Polack,* 18 Cal. 625; *Asevado v. Orr,* 100 Cal. 293.

3. It is objected that there was no evidence to which to apply instruction No. 3. This instruction authorized the jury to award appellee any damages sustained through the falling in of the mine workings pending the writ. The objection is that the condition of the mine in the particular mentioned was not shown until long after the injunction had been dissolved. It appears from the testimony of Gockle and Purrier that the mine was in excellent condition September, 1896, the date of the issuance of the writ of injunction. From the testimony of the same parties the condition of the mine is shown about the time the injunction was dissolved. This was sufficiently definite as to the condition of the mine when the writ was dissolved, in the absence of any objection to testimony on this account, and in the absence of any evidence whatever upon the part of the appel-

lants that the mine was in a different condition soon
after the writ was dissolved than it was on the exact
date of its dissolution.

4. It is contended that the decision.of the sec-
retary of the interior annulling the entry of Quinn
and permitting an amendment of the entry of
Sprankle is erroneous, and that the patent issued to
Sprankle in pursuance of this decision is void. The
points upon which the decision and patent are
assailed were all within the jurisdiction of the inter-
ior department and were passed upon by it in ren-
dering the decision mentioned and in issuing the pat-
ent, and they cannot be litigated here. This is an
attempt to collaterally attack the decision and pat-
ent, which character of attack, as is well settled, can-
not be made.

"Its judgment upon these matters is that of a
special tribunal, and is unassailable except by direct
proceedings for its annulment or limitation. Such
has been the uniform language of this court in
repeated decisions. * * * Until set aside or en-
joined, it must, of course, stand against a collateral
attack with the efficacy attending judgments founded
upon unimpeachable evidence. So with a patent for
land of the United States, which is the result of the
judgment upon the right of the patentee by that de-
partment of the government, to which the alienation
of the public lands is confided, the remedy of the
aggrieved party must be sought by him in a court
of equity, if he possesses such an equitable right to
the premises as would give him the title if the pat-
ent were out of the way. If he occupy with respect
to the land no such position as this, he can only apply
to the officers of the government to take measures
in its name to vacate the patent or limit its opera-
tion. It cannot be vacated or limited in proceedings
where it comes collaterally in question."—*Steel v.*

*Smelting Co.,* 106 U. S. 447, 451; *Justice Mining Company v. Lee,* 21 Colo. 260.

5.   It is said that appellee was not the owner of the land at the time injuries to it were sustained, therefore, it cannot recover therefor.   Sprankle entered said S. ½ S. E. ¼ September 30, 1895.   By the decision of the secretary he was permittted · to amend this entry so as to substitute for the S. ½ S. E. ¼ the N. ½ S. E. ¼, such amendment to take effect as of September 30, 1895.   The patent issued to Sprankle in pursuance of the decision of the secretary of the interior related back to September 30, 1895.—*St. Ong v. Day,* 11 Colo. 370; *Shipley v. Cowing,* 91 U. S. 330, 340.

Sprankle was, therefore, by the doctrine of relation, the legal and equitable owner of this land when he conveyed to Purrier in October, 1895.   Purrier went into possession of the property intended to be conveyed by the grantor, and intended by him to be purchased although misdescribed in the deed, and he thereby became the equitable owner thereof.   January, 1896, Purrier conveyed to appellee; appellee went into possession of the property intended to be purchased by it, and intended by the grantor to be conveyed to it, and spent several thousand dollars in developing the same, and was in the actual possession. thereof, operating the property, at the time of the issuance of the writ herein.   Although the deed misdescribed the property intended to be conveyed, appellee was the equitable owner thereof at the time of the issuance of the writ and pending the writ.   Injuries, damages for which are sought herein, are injuries to the realty; the party injured thereby is appellee; being the equitable owner of the realty at the time the injuries were done, he is entitled to recover for damages sustained thereby.—Am. and Eng. Ency. of Law, Vol. 26, p. 590 (subdiv. 5); *Mil-*

*ler v. Zufall,* 113 Pa. St. 317, 325; *Brown v. Hartzell,* 87 Mo. 564; *Carney v. Reed,* 11 Ind. 417.

6. It is said that the injunction bond given is in a larger sum than that prescribed by order of court. This, if true, worked appellants no prejudice, because the damages recovered are in a smaller amount than the penalty of the bond said to be fixed by the court.

For the error committed in the allowance of counsel fees expended in resisting the allowance of the preliminary writ of injunction as an element of damages in the recovery on the bond, the judgment will be reversed.                         *Reversed.*